MARVIN, J.
The issues in this case grow out of the claim of the defendant in error against the plaintiff in error for damages which, it is said, accrued to the defendant in error because the plaintiff in error failed to keep a contract which it undertook on behalf of certain other parties who had theretofore contracted with the defendant in error.
If the Kennard House Company is indebted at all to Mathivet, it is because it assumed an obligation made with him. by other parties; and that obligation, if it exists at all, is because of a paper writing purporting to be a contract between J. V. Mathivet on the one part, and R. E. Gill and others on the other part. This writing is set out in full in the record, and is there designated as exhibit “B.” On its face it purports tobe a contract between Mathivet on the one part, and R. E. Gill and fourteen others on the other part. Under this writing, Mathivet agreed to sell certain chattel mortgages which he held or claimed to hold against property then in the hands of an assignee of the Kennard Hotel Company. Two of the parties whose names appear in the body of said writing as purchasers of such chattel mortgages, failed to.sign the writing, and it is urged that, because of such failure on their part to sign, the writing never rose to the dignity of being a contract unless it appears that those who did sign, waived the signatures of those whose names appeared in the body of the contract and who failed to sign.
So far as the evidence shows, the most of those who signed this contract made no claim that others should sign, and it is not claimed that their signatures were obtained with any understanding that all the others were to sign, except in so far as it is said that that is implied by the fact that these other names appear in the body of the contract.
In any event, R. E. Gill who signed this contract as one of the purchasers of the chattel mortgage, if the testimony of Mathivet is to be believed, certainly waived any right to have any signatures thereto which were not given, because Mathivet says that Gill delivered the contract to him, asking that Riblet’s name should be obtained, and that he then obtained *750 the signature of Riblet which appears upon the writing.
Now, the action of the paintiff in error, which it is claimed binds it to carry out the provisions of exhibit “B”, are shown in a resolution adopted by the board of directors of the plaintiff in error, in which it undertook to pay the obligations incurred by R. E. Gill and his associates in and about the purchase of the property which the assignee had in his hands to sell. And ■ certainly Gill was bound by this first writing, exhibit “B”, so far as we can judge from the evidence.
Without going into any elaborate discussion of the evidence, it seems clear to us that we would not be justified in finding that the court below was wrong in holding that the contract, exhibit “B”, was delivered to Mathivet. And that being so, with the further evidencie that such delivery was just before Gill went to the sale of the mortgaged property and bid it in, we think it clear that this was one of the obligations entered into by Gill in his efforts to acquire the Kennard House property. If this is so, then the case could not be reversed upon the facts.
It is said there was error, however, in the admission as evidence upon the trial, of certain records of the probate court, and especially of the return made by the assignee to that court.
We think these records, except as to the report made by the assignee, were admissible for the purpose of showing that the property was sold to Gill and his associates, and upon what terms it was sold. It is quite probable that it was not neces sary that all of the record which went into the case, should have gone’in; but we see no prejudice to anybody in the admission of all of it, and hence no error which could justify a reversal.
As to the report made by the assignee to the probate court, we think it was admissible to show what came to his hands, which could be applied to the payment of the debt due to Mathivet Secured by the chattel mortgages, and thereby helping to show to what extent Mathivet was damaged by a failure on the part of the company to carry out the contract made with him by Gill and others.
Another error is claimed in the'admission of the testimony of Judge White. The answer made by the judge to the question put to him, was not very clear; but, since the fact which it was sought to prove by him, was directly sworn to by Mathivet, and uncontradicted by anybody, we see no error to the prejudice of the plaintiff in error in not excluding the testimony of Judge White. That the testimony of Mathivet on this point was admissible, can admit of no doubt.
The probate judge confirmed a sale which was upon such terms that it is clear that he would not have confirmed it but by the consent of those who were interested in the avails of that sale, chief among whom was Mathivet. And we think it, therefore, entirely proper that that fact should be made to appear, and that its tendency is to establish the claim of Mathivet that the contract made with him by Gill and others was in and about the acquisition by those who subsequently organized the Kennard House Company, of that Kennard House property.
The judgment of the court of common pleas is affirmed.